CB88LAUC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

         v.                              12 Cr. 161 (DLC)

SALVATORE LAURIA,

              Defendant.

------------------------------x
                                         November 8, 2012
                                         2:35 p.m.
Before:

                    HON. DENISE COTE

                                         District Judge

                         APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
RUSSELL CAPONE
     Assistant United States Attorney

DAVID GORDON
     Attorney for Defendant


Also present:  DENNIS KHILKEVICH, Pretrial Services
```

1     (Case called)
2     THE DEPUTY CLERK:  Is the government ready to proceed?
3     MR. CAPONE:  Yes.  Russell Capone for the government.
4  With me at counsel table is pretrial services officer Dennis
5  Khilkevich.  Good afternoon, your Honor.
6     THE COURT:  Good afternoon.
7     THE DEPUTY CLERK:  For the defendant, are you ready to
8  proceed?
9     MR. GORDON:  Yes.  David Gordon.  Good afternoon.
10    THE COURT:  Good afternoon.
11    We are here because the defendant failed a drug test.
12 He had not been honest, as I understand it, in acknowledging
13 his use of drugs.  In September, when he was scheduled for his
14 interview by the United States probation department as part of
15 its preparation of a presentence report, he underwent a drug
16 test and by October, some date after that September 24 test,
17 the probation department learned he had tested positive for the
18 use of cocaine.
19    The defendant admitted finally that not only has he
20 been using cocaine, but he is also addicted to painkillers.  He
21 works as a DJ, which I take it puts him in fairly constant
22 venues with temptation.  And he has a guilty plea entered in
23 this action already which carries with it, I believe, pursuant
24 to his plea agreement, a stipulated guidelines range of 21 to
25 27 months.  I obviously don't have the PSR yet.  I don't have

3
CB88LAUC

1  the parties' sentencing submissions. I am not in a position to
2  make any independent findings, but that's what the parties
3  acknowledged at the time they entered that agreement.
4  　　　So that's the context in which I understand it. So
5  there is this dishonesty. There is this unacknowledged drug
6  dependency and usage. There is this prison sentence which the
7  defendant can expect to be imposed fairly soon, in the early
8  part of next year.
9  　　　I will hear from the government.
10 　　　MR. CAPONE: The government is seeking remand here. I
11 spoke to Mr. Gordon and said I wouldn't necessarily insist on
12 remand today, but for the defendant to be remanded in light of
13 the positive cocaine test.
14 　　　What is particularly important to the government is
15 that this is actually the defendant's second violation of
16 conditions of release because this very case was a violation of
17 conditions of state bail. When the defendant was committing
18 the crimes to which he pled guilty here, he was on bail in a
19 state case in Brooklyn, to which he has since pled guilty.
20 That's a mortgage fraud case. He posed as a mortgage broker
21 and defrauded an 81-year-old veteran out of nearly $350,000.
22 He was arrested in July 2011. This crime continued for the
23 next couple of months after that.
24 　　　When he was arrested in this case in January 2012, my
25 initial position was, in light of that, to actually seek the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1  defendant's detention.  Pretrial recommended release with one
2  signature, I believe, and we effectively compromised on home
3  detention with electronic monitoring as a way to protect the
4  public and ensure the defendant's appearance.  So from my
5  perspective, that was already a chance given to the defendant
6  to prove that he can abide by conditions of release, relatively
7  strict conditions of release, even though he had already
8  committed a crime, one to which he has now pled guilty, even
9  though he had already been on bail for committing a crime when
10 he committed this crime.  So this was the defendant's second
11 bite at the apple and he has failed it.
12            As your Honor is aware from the report, he tested
13 positive for cocaine.  He lied about it at first to pretrial
14 services before being honest, but I think he has proven that
15 effectively the strictest conditions of release are
16 insufficient for him to abide by his conditions of release, and
17 he should not now be given a third chance.
18            So for those reasons, it is the government's position
19 that the defendant should be remanded.
20            THE COURT:  Mr. Gordon.
21            MR. GORDON:  Your Honor, Mr. Lauria knows he is going
22 to have to go in.  He knows because of the state case and this
23 case he is going to have to serve some time.  He denied
24 initially having a drug problem.  Unfortunately, that's pretty
25 typical of people who have drug problems.  They are usually in

1  denial for quite some time until they finally acknowledge to
2  themselves and to others that they have a problem.  He is now
3  dealing with that problem.  He is in a program.  His last two
4  tests have been negative.  He understands that if he is
5  released, if he is allowed to stay out, he will be tested
6  today, and he insists that that test will be negative.  He has
7  got three sessions, two group sessions and one individual
8  session, starting next week at the program that he has been
9  going to for the last couple of weeks.
10          It would seem to me, your Honor, that he is dealing
11 with the problem.  He knows he is going to have to go in, but
12 he has serious problems, financial problems and problems with
13 his family, in that they haven't been able to pay their rent
14 for the last several months.  He has to relocate his family.
15 All he asks is that he be given a chance to surrender sometime
16 after the beginning of December so that he can get his family
17 settled.  He has got a wife, an eight-year-old daughter.  He
18 really has to provide for them.  He knows he is going to serve
19 some time in this case.  He knows he has got to go in.  We only
20 ask that he be allowed to get his treatment for another few
21 weeks and then surrender the first week in December, with the
22 understanding that if he comes back with any dirty urines prior
23 to that, that he would be remanded immediately.
24          THE COURT:  What program is he in?
25          MR. GORDON:  It's called Chemical Dependency,

1  Hicksville Counseling Center, at 180 Broadway, Hicksville, New
2  York. I have a letter from the program if your Honor wants to
3  see it.
4      THE COURT: Is this something that pretrial services
5  or the probation department is privy to?
6      MR. GORDON: They know about it now.
7      THE COURT: Mr. Khilkevich, do you know this program?
8      MR. KHILKEVICH: No, your Honor. I don't know this
9  program. This program is in Long Island. But this is not a
10 contract facility that we use. It's my understanding Mr.
11 Lauria enrolled himself in this program in anticipation of this
12 hearing. We would have referred him to a program as a
13 condition of his treatment in this case, which I was going to
14 ask for a condition of treatment at the hearing, and would put
15 him in a program. But he is already in the program. I have
16 the letter in front of me. It verifies he is attending the
17 program. We can verify he is in the program. I am not
18 recommending remand at this point.
19     THE COURT: You and the government should be,
20 hopefully, on the same page on that. You should consult with
21 each other in advance of hearings like this, and if there is a
22 difference of opinion, fine, but it should be in consultation.
23     MR. CAPONE: We have, your Honor. There is a
24 difference of opinion.
25     THE COURT: OK. Great. Then that's fine.

7
CB88LAUC

          With respect to this program, Mr. Khilkevich, are you
prepared to take responsibility for coordinating with this
program so I am immediately notified if he fails any drug test?
          MR. KHILKEVICH:  Yes, your Honor.
          THE COURT:  How frequently under this program is the
defendant tested for drugs?
          MR. KHILKEVICH:  Your Honor, pretrial services will
test him independently of the program.
          THE COURT:  How frequently?
          MR. KHILKEVICH:  We will test him weekly.  The program
will probably test him weekly as well if he is in the
beginning, which is something they have to do, but we have our
own testing in place.
          THE COURT:  I didn't get notice of a failure of this
drug test in September for weeks.  I don't know why there was
that delay.
          MR. KHILKEVICH:  Once the defendant is tested, the
presumptive test needs to be confirmed by an independent lab,
which is a national lab, and with probation it takes maybe a
few weeks, but it took some time for us to get the results.  As
soon as we got the results from the probation department, I
prepared the memorandum to your Honor, within days, within one
or two days.
          THE COURT:  What can we do so that we don't have weeks
of delay?  If there is an immediate test that looks positive,

                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

1  you need it confirmed by the laboratory?

2  MR. KHILKEVICH: Well, the process during a
3  presentence interview, the probation officer does the test.
4  It's a process they have to follow. When there's a positive
5  test, that's in our lab. We have to send a confirmation to
6  make sure there is no mistake, and that's why it took so long.
7  It generally doesn't take that long once somebody is in the
8  program. When pretrial tests, routinely, which is what is
9  going to happen in this case if your Honor allows Mr. Lauria to
10  remain out on bail, he will be tested by his officer, and I can
11  direct that officer to test him as often as the Court would
12  like him to be tested. It could be weekly. I can report to
13  your Honor with the first positive we receive immediately. It
14  would take days, not weeks.

15  THE COURT: So you would know within days of each
16  weekly test whether or not he had failed?

17  MR. KHILKEVICH: Yes, one or two days.

18  We understand at this point he has a problem. At his
19  initial bail interview in January of this year, Mr. Lauria
20  denied any drug problem. He declined urinalysis, giving all
21  sorts of reasons. Now he understands that he does have a
22  problem. He admitted now at this point. He accepts
23  responsibility for it. And at pretrial services, we always
24  look for ways to assist defendants with drug addiction.

25  THE COURT: So I am a little surprised. I know this

1  doesn't apply to Mr. Lauria. But I would think that a refusal
2  to participate in a urinalysis should be deemed to be a
3  positive, a failure of the urine test.
4        MR. KHILKEVICH: That's not the case.
5        THE COURT: That is the case for people on probation.
6  If you don't report for your drug test, it's deemed to be a
7  failure. And that's the only way the program can work.
8  Otherwise you just wouldn't show up for your drug tests if you
9  were using.
10        MR. KHILKEVICH: The issue in this particular case, we
11  had no knowledge of Mr. Lauria having a cocaine problem. When
12  he was first arrested, he was asked to take a drug test, which
13  was completely voluntary. We could not force him. And the
14  Court did not take any action with respect to his refusal to
15  take the test.
16        THE COURT: I think I am not explaining myself clearly
17  enough. I am not talking about forcing somebody. I am talking
18  about a presumption that if they refuse the voluntary test,
19  that we assume for purposes of bail review that they have a
20  drug problem and treat it that way. You see the distinction?
21        MR. KHILKEVICH: Yes, your Honor.
22        THE COURT: OK. I will separately raise this issue
23  with the head of pretrial services. As you said, he had a drug
24  problem and he didn't want to cooperate in taking the drug
25  test. So it took you many months. You never learned about it.

1  It was probation who learned about it.

2  MR. KHILKEVICH: I just want to note for the record,
3  the information about him not taking the initial test was
4  available in the initial bail hearing. The judge knew that
5  information and the condition was not imposed, it was not asked
6  for. It's not unusual for defendants to decline urinalysis at
7  the initial bail interview. That's usually not enough to
8  impose a drug testing condition. We usually look at other
9  factors. That's not really unusual for it to happen.

10  THE COURT: I will be happy to raise it with the
11  magistrate judges in this district too.

12  MR. KHILKEVICH: Thank you.

13  THE COURT: Since you think it's an issue not just
14  with pretrial services, but also with magistrate judges who do
15  initial bail reviews, I will be happy to raise it with them as
16  well.

17  So circling back to Mr. Lauria and his specific
18  issues, the government is not asking for remand today. So I
19  will have the defendant remanded by December 7 to the MCC. He
20  must surrender by 2:00 that day.

21  I am going to ask, Mr. Khilkevich, please, to contact
22  the defendant's drug program, and whoever is supervising his
23  release out on Long Island, make sure the defendant is tested
24  at least weekly for drug use. I want immediate notification if
25  he fails any drug test. If he does, I expect immediate remand,

1    even Thanksgiving week.  But otherwise he will be ordered to
2    surrender December 7 at 2:00.
3             MR. GORDON:  If he can arrange for his family to be
4    settled before then, and he wants to go in before then to start
5    serving the sentence that he anticipates, I assume he can
6    surrender before the 7th at 2:00.
7             THE COURT:  It will be fine with me.  You might need
8    an order from me in order for the facility to receive him, but
9    you can talk with the government and get me the appropriate
10   proposed order.
11            MR. GORDON:  OK.  Fine.
12            THE COURT:  Anything else we need to do?
13            Mr. Lauria, I should tell you, obviously you haven't
14   been sentenced yet.  You're going to be sentenced in January.
15   So if you're involved in any additional illegal activity
16   between now and your sentence date, I can assure you it will
17   not help you when it comes time for me to impose sentence.
18            Do you understand that, sir?
19            THE DEFENDANT:  Yes, I do.
20            THE COURT:  OK.  Thank you, all.
21            (Adjourned)