UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------X

UNITED STATES OF AMERICA      :

  - v -      :

                                                          12 Cr. 161 (DLC)

SALVATORE LAURIA,      :

            *Defendant*.      :

---------------------------------------------------X


**DEFENDANT SALVATORE LAURIA SENTENCING MEMORANDUM**


DAVID GORDON, ESQ.
Attorney for Defendant
*Salvatore Lauria*
148 East 78th Street
New York, NY 10075
Tel: (212) 772-6625

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------X

UNITED STATES OF AMERICA     :

  - v -                                         :
                                                      12 Cr. 161 (DLC)

SALVATORE LAURIA,             :

                          *Defendant*.    :

---------------------------------------------------X

**DEFENDANT SALVATORE LAURIA'S SENTENCING MEMORANDUM**

This Sentencing Memorandum is submitted on behalf of Salvatore Lauria, who is scheduled to be sentenced by your Honor on Friday, January 4, 2013.[1] Mr. Lauria was arrested in this case on January 18, 2012. He was released on bail with electronic monitoring and home confinement until he was sentenced on December 6, 2012 to an indefinite term of

---

[1] It is respectfully requested that your Honor accept this Sentencing Memorandum which was due Friday, December 21, 2012, if the sentencing goes forward on January 4, 2013. I was unable to submit this Sentencing Memorandum by that date, as I had not yet received several of the attached letters written to your Honor on Mr. Lauria's behalf. What I feel are perhaps the two most important letters, that of Mr. Lauria himself and that of his aunt Lori Izen, I only received today.

-1-

one and one-half to four and one-half years' imprisonment on an unrelated state case involving mortgage fraud .

On August 28, 2012, Mr. Lauria pleaded guilty before your Honor to Count 1 of the indictment charging him with conspiracy to commit mail fraud and bank fraud in violation of 18 U.S.C. § 1349.

It is respectfully submitted that despite the fact that Mr. Lauria committed the instant offense after having been arrested in Brooklyn on the state mortgage fraud case, a sentence below or at the bottom of the sentencing guideline range, to be served concurrently with the state sentence that he is serving,[2] followed by three years' supervised release is warranted considering all the required factors listed in 18 U.S.C. § 3553(a), and the requirement that your Honor impose a sentence that is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2).

18 U.S.C. § 3553(a) Factors

As your Honor is aware, the factors listed in 18 U.S.C. § 3553(a) are as follows:

---

[2]A concurrent sentence of at least 18 months will ensure that Mr. Lauria receives some additional time in custody for the instant offense as he cannot receive any federal credit for any of time between December 6, 2012, when he went into state custody, up until the date your Honor sentences him on the federal case, and he must serve at least 18 months on the state sentence before he is eligible for parole. In the alternative, if your Honor feels that the sentence in this case should be at least partially consecutive to the state sentence, then it is respectfully submitted that your Honor should impose a sentence at or below the bottom of the guideline range and state in the judgment that such sentence is to commence;  (i) on the earlier of the date Mr. Lauria is released on the state sentence, or (ii) on June 6, 2014 (the date that he is eligible for state parole).  See U.S.S.C. §5G1.3(c), Application Note 3(B).

Factors To Be Considered in Imposing a Sentence.— *The court shall impose a sentence sufficient, but not greater than necessary,* to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

    1. the nature and circumstances of the offense and the history and characteristics of the defendant;

    2. the need for the sentence imposed—

        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B) to afford adequate deterrence to criminal conduct;

        (C) to protect the public from further crimes of the defendant;

        (D) to provide the defendant with needed educational or vocational training, medical care, or correctional treatment in the most effective manner... [Emphasis added.]

<u>The Nature and Circumstances of the Offense</u>

Although Mr. Lauria was an active participant in the conspiracy and accepts full responsibility for his conduct, it appears that the idea for committing the offense involving the charitable organization (the only offense charged against Mr. Lauria) originated with CC-2 (an employee at the UPS store) and codefendant William Hanoman (a former employee of

the UPS store). *See* PSR ¶ 21. It also appears that both Mr. Hanoman and Mr. Hutchinson participated in both the charitable organization fraud and the fraudulent organization fraud, whereas Mr. Lauria only participated in the former.

Mr. Lauria was recruited to open bank accounts through which the stolen checks payable to the charitable organization could be deposited and then from which money could be withdrawn. Although the intended loss, the amount by which the guideline offense level was properly enhanced, was $148,000, (the amount deposited into the accounts opened by Mr. Lauria (*see* PSR ¶¶ 15-17d)), the actual loss was $66,867.79, the amount withdrawn from those bank accounts. The rest of the money deposited into the various accounts was frozen. *See* PSR ¶ 34.

According to the PSR, $58,000 in checks drawn on Mr. Lauria's accounts were deposited into accounts controlled by Mr. Hanoman (*see* PSR ¶ 17f), and $5,130 in checks drawn on one of Mr. Lauria's two accounts were deposited into an account of codefendant James Hutchinson. In addition, $10,000 in checks drawn on one of Mr. Lauria's Chase accounts were deposited into a Citibank account controlled by CC-2.

According to the Sentencing Memorandum submitted on behalf of William Hanoman he made a total of approximately $65,000 from checks stolen from the UPS store which were from a scam operated by a woman from Canada named Vickie who sent phony bills for services never rendered by her fictitious company to nursing homes, hospitals and other large institutions who would often pay the bill without realizing that no money was owed to

Vickie's company. James Hutchinson received 15 % of the face value of the checks for his role in cashing them, and another individual Joel Amador, another UPS store employee, was paid $2,500 for his role in stealing the checks from Vickie's postal box at the UPS Store. See Hanoman Sentencing Memorandum, at 3-4. As no mention is made in Hanoman's Sentencing Memorandum of his role in the charitable organization fraud, it is not clear whether the $65,000 he made includes any or all of the $58,000 in checks payable to the charitable organization deposited into and then drawn on the Lauria accounts and deposited into his accounts.

The PSR refers to ATM withdrawals made by Mr. Lauria from one of the two accounts he opened in the name of the charitable organization, without specifying the amount withdrawn. Mr. Lauria's recollection is that he personally withdrew approximately $15,000 of the amount deposited into the two accounts. Thus, he profited far less than Mr. Hanoman and perhaps no more than Mr. Hutchinson or CC-2.

The History and Characteristics of the Defendant - 18 U.S.C. § 3553(a)(1)

Attached as Exhibit 1 is a letter from Mr. Lauria to your Honor in which he explains why he committed the offense (fully accepting responsibility for his conduct despite those reasons), describes the consequences of his conduct to himself and to his family, and gives his assurance that if given another chance he will be law abiding in the future. It is clear from his letter that he is extremely remorseful for having broken the law. It is also clear from his letter that there are mitigating circumstances in connection with his involvement in the

instant offense. The death of three close family members, including his father who was severely disabled by multiple sclerosis for many years, and his mother's being diagnosed, operated on, and treated for stage four ovarian cancer, as well as the loss of his business, overwhelming debt - owing money to family members, friends as well as loan sharks, caused him to fall apart and become addicted to drugs and alcohol, all of which explains, why at the age of 36 he committed the instant offense as well as the mortgage fraud prosecuted in the state courts, never before having broken the law.

Additional letters attached as exhibits are the following:

Exhibit 2 - Kim Lauria's Letter. Ms. Lauria is Mr. Lauria's wife;

Exhibit 3 - Doreen Lauria's Letter. Ms. Lauria is Mr Lauria's mother;

Exhibit 4 - Gina Lauria's Letter. Ms. Lauria is Mr. Lauria's sister;

Exhibit 5 - John Lauria's Letter. Ms. Lauria is Mr. Lauria's uncle;

Exhibit 6 - Lori Izen's Letter. Ms. Izen is Mr. Lauria's aunt;

Exhibit 7 - Enrico Giardina and Frank Imaparato Letter. They are old friends of Mr. Lauria.

The common theme of all of these letters, especially that of his aunt Lori Izen, is that Mr. Lauria is a good, compassionate, generous person, a loving, devoted and caring father, husband, son, devoted to his family, who lovingly cared for each of his sick and disabled family members. The letters express the devastating effect this case has had upon Mr. Lauria and his family, especially upon his eight year old daughter, and confidence that Mr. Lauria

is truly remorseful and not a threat to society and that he will not give your Honor a reason to regret it if you show leniency.

Conclusion

For all the reasons discussed above, I respectfully request that your Honor sentence Mr. Lauria to a concurrent sentence below or at the bottom of the guideline range, followed by three years' supervised release, a sentence that is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2).

Dated: December 26, 2012
New York, New York

Respectfully submitted,

/s/
David Gordon
Attorney for Defendant
 *Salvatore Lauria*
148 East 78th Street
New York, NY 10075
(212) 772-6625